<hr />

### SANDEN v. MORGAN.

(District Court, S. D. New York. June 7, 1915.)

1. JUDGMENT ⬅648—CONCLUSIVENESS—ACQUITTAL IN CRIMINAL CASE—INJUNCTION.

A verdict of acquittal in a criminal prosecution for a violation of Cr. Code, § 215 (Act March 4, 1909, c. 321, 35 Stat. 1130 [Comp. St. 1913, § 10385]), for fraudulent use of the mails, is not res adjudicata, and, even assuming that inquiry was made into the same kind of appliance as that in controversy, would not be relevant on the trial of a suit by the accused, after acquittal, to·enjoin the postmaster from carrying out a fraud order, issued under Rev. St. §§ 3929, 4041, as amended (Comp. St. 1913, §§ 7411, 7573) by the Postmaster General pending his trial on the indictment, and continued after his trial and acquittal; but on a motion for a prelim-

Inary injunction, the court might consider the proceedings in and the result of the prosecution under the indictment.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1309, 1310; Dec. Dig. ☞648.]

2. POST OFFICE ☞26—FRAUD ORDER—ACTION TO ENJOIN—BURDEN OF PROOF.

Plaintiff, in an action against the postmaster to enjoin the enforcement of a fraud order, issued under Rev. St. §§ 3929, 4041, as amended (Comp. St. 1913, §§ 7411, 7573), pending his trial for a fraudulent use of the mails, had the burden of overcoming the presumption that the conclusion of the Postmaster General was right, or of pointing out his excess of statutory power or his wanton or malicious exercise thereof, and a preliminary injunction will not issue unless the court is clearly convinced that plaintiff would ultimately prevail; and hence, where it appeared that in the proceeding upon which the Postmaster General acted, due notice was given to plaintiff and an extensive and elaborate hearing was held on the merits, the motion should be denied.

[Ed. Note.—For other cases, see Post Office, Dec. Dig. ☞26.]

In Equity. Suit for an injunction by Albert T. Sanden against Edward M. Morgan. On motion for a preliminary injunction to restrain defendant from enforcing a fraud order issued against the plaintiff herein. Motion denied.

Motion for a preliminary injunction to restrain defendant from interfering with the delivery to plaintiff of mail matter addressed to plaintiff or the Sanden Electric Company, and, in brief, to enjoin the carrying out of a so-called "fraud order" issued by the Postmaster General pursuant to the provisions of sections 3929 and 4041 of the Revised Statutes as amended (Comp. St. 1913, §§ 7411, 7573).

The papers presented for consideration are: (1) Plaintiff's bill of complaint; (2) defendant's answer thereto; (3) affidavit on behalf of plaintiff of Gideon H. McIvor, verified May 18, 1915; (4) affidavit on behalf of plaintiff of Albert T. Sanden, verified May 18, 1915; (5) hearing before the acting Assistant Attorney General at Washington "in the matter to show cause why a fraud order should not issue against the Sanden Electric Company and A. T. Sanden;" (6) order of the Postmaster General No. 8460, dated November 6, 1914; and (7) opinion of W. H. Lamar, solicitor for the Post Office Department, dated October 31, 1914, recommending the issuance of a fraud order.

Strictly speaking, the affidavits of McIvor and Sanden should not be read in support of the motion, as they were submitted after the motion was argued, and without leave; but, in order to avoid any technicalities, these affidavits are read.

An outline of the allegations of the bill shows as follows: Plaintiff is a citizen of the state of New York and an inhabitant of the Southern district. Defendant is United States postmaster for the borough of Manhattan, city of New York. About 1880, plaintiff, as he alleges, devised a belt for generating and conveying electric currents to the impaired or diseased portions of the body, and began the manufacture and sale of the said belt, and claims that human ailments of divers and sundry kinds are beneficially treated by the use of this belt. Plaintiff alleges, in effect, that he was in this business from 1880 until November, 1914, and during this period sold and delivered many thousands of belts to customers throughout the United States and elsewhere, giving to the great majority of people purchasing the same complete satisfaction and relief and, in many cases, curing the ailments of which they complained: that he was receiving about 500 letters per day, and his receipts were about $500 per day; that he was under heavy expense for offices and for employés; that his business is honest and legitimate and devoid of fraud, deceit, misrepresentation, or scheme or device to defraud, and in every way conforms with the laws of the United States; that plaintiff conducted the business under his own name and under the trade-name of Sanden

Electric Company, under which trade-name he also conducted correspondence with his customers, sending out letters and literature and receiving replies, money, money orders, drafts, and checks. He further states that in June, 1914, the postal authorities, and others acting in concert, caused plaintiff to be indicted by the grand jury of the United States in the Southern district of New York, for a violation of the provisions of section 215 of the United States Criminal Code; that on or about November 6, 1914, pending the trial of defendant on said indictment, the Postmaster General of the United States issued an order to defendant herein directing him to refuse to deliver to plaintiff any mail coming to the post office in the Borough of Manhattan, city of New York, directed to plaintiff in his own name, or in the name of the Sanden Electric Company, and to stamp the mail fraudulent, and to refuse to pay any money orders made payable to plaintiff under said names; that the defendant has carried out this order of his superior officer, to the great damage of the plaintiff; that on November 23, 1914, plaintiff was arraigned upon his indictment, interposed a plea of not guilty, was thereafter duly tried by a jury, which rendered a verdict of acquittal. Plaintiff alleges that his business on June 4, 1914, and at the times charged in the indictment, were identical with his business in November, 1914, when the Postmaster General issued his order, and in December, 1914, when defendant was tried and acquitted on the indictment referred to. Plaintiff insists that he is aggrieved by the continuance of the order of the Postmaster General, which remains unrevoked notwithstanding plaintiff's acquittal, and he asks in his bill for a permanent injunction, restraining the defendant from carrying out the order of the Postmaster General.

The defendant denies every material allegation in the bill of complaint, except that he does not deny that the plaintiff was indicted under section 215, supra, and acquitted.

The affidavits of McIvor and Sanden state, in effect, that the plaintiff has had in his regular employ a practicing physician, whose opinion and advice were always asked and had concerning the use of belts by parties applying for the purchase thereof.

The proceedings before the Assistant Attorney General upon which the Postmaster General acted show that due notice was given to plaintiff, and that an extensive and elaborate hearing was held on the merits. At this hearing experts were examined, and the literature used by plaintiff was comprehensively set forth.

John M. Coleman, of New York City, for plaintiff.

H. Snowden Marshall, of New York City (Robert P. Stephenson, Asst. U. S. Atty., and W. H. Lamar, both of New York City, of counsel), for defendant.

MAYER, District Judge (after stating the facts as above). This motion could readily be disposed of on strictly technical grounds, but I prefer to consider it on the merits. Sections 3929 and 4041 of the Revised Statutes as amended have come under the consideration of the courts on a number of occasions. Public Clearing House v. Coyne, 194 U. S. 497, 509, 510, 24 Sup. Ct. 789, 48 L. Ed. 1092; Bates v. Payne, 194 U. S. 106, 24 Sup. Ct. 595, 48 L. Ed. 894; In re Rapier, 143 U. S. 110, 12 Sup. Ct. 374, 36 L. Ed. 93; In re Jackson, 96 U. S. 727, 24 L. Ed. 877; People's United States Bank v. Gilson (C. C.) 140 Fed. 1; Id., 161 Fed. 286, 88 C. C. A. 332; Missouri Drug Co. v. Wyman (C. C.) 129 Fed. 623; Harris v. Rosenberger, 145 Fed. 449, 76 C. C. A. 225, 13 L. R. A. (N. S.) 762; Hall v. Wilcox, 225 Fed. 333.

[1] If it were not for the acquittal of the plaintiff on the indictment referred to supra, the motion might be disposed of without further comment. The verdict of acquittal in the criminal case is in no sense

res adjudicata and, even assuming, for the purpose of the argument, that inquiry was made into the same kind of electric appliance which is here one of the subjects of controversy, the acquittal in the criminal case would not be relevant on the trial in this case. But in determining a motion for preliminary injunction, the court might very well take into consideration, as a persuasive argument, the proceedings in and result of the prosecution under the indictment.

[2] Of course, in the criminal case involving the trial of the indictment under section 215 of the United States Criminal Code, the government was bound to prove the guilt of the defendant to the satisfaction of the jury beyond a reasonable doubt. Here, under the most favorable construction to plaintiff, the burden is upon him, in effect, to prove a negative by a preponderance of evidence—that is to say, to overcome the presumption that the conclusion of the Postmaster General is right or to point out that the Postmaster General has exceeded the statutory grant of power or exercised it wantonly or maliciously. As Judge Hough puts it:

"The presumption, however, is ample to put upon a complainant a burden of proof which it is difficult to imagine him meeting on a motion for preliminary injunction."

The opinion of the solicitor for the Post Office Department, dated October 31, 1914, is a carefully considered and comprehensive review, judicial in tone, which aptly sets forth the facts disclosed by the record and states certain conclusions fully justified by that record. The proceeding before the Postmaster General was independent of the proceedings before the grand and petit juries, and the decision arrived at by the Postmaster General was an independent conclusion upon a full and fair hearing. Indeed, so far as the record shows, there was afforded to plaintiff opportunity for explanation, testimony, and argument quite as full as might be expected at the hands of a court. There are many acts of executive officials which are not reviewable by the courts, and in a case of this character, a preliminary injunction should not issue unless the court is clearly convinced that plaintiff will ultimately prevail. In my view, the Post Office Department should be encouraged in promptly stopping a fraudulent use of the mails, and should be restricted in its activities in that direction only where it is clear that the Postmaster General has gone beyond his power or (as is difficult to believe) has acted wantonly or maliciously. By the prompt as well as fair exercise of the power conferred by sections 3929 and 4041 of the Revised Statutes, supra, much damage to the public can be avoided, many unfortunate and foolish people may be spared from suffering what to them constitutes a considerable loss, and some long and tedious trials on indictments can be averted.

There is nothing in the case of School of Magnetic Healing v. McAnnulty, 187 U. S. 94, 23 Sup. Ct. 33, 47 L. Ed. 90, which entitles plaintiff to a preliminary injunction, for in the case at bar the Postmaster General has arrived at conclusions of fact based, as I may repeat, upon a full hearing. If the Postmaster General is right, then to abrogate the fraud order pending the litigation would result in subjecting the public to loss which probably could not be repaired. If

the Postmaster General is wrong, then the plaintiff may suffer some financial loss for the time being, and this he has already suffered for a number of months without application for relief to the courts.

In the circumstances, however, plaintiff, if he so desires, is entitled to a speedy trial, and, in denying the motion, the order may provide that the cause may be placed on the June equity calendar at the option of the plaintiff.

Motion denied.  Settle order on two days' notice.