**UNITED STATES**

v.

**CASARES-MORENO.**

Crim. A. No. 23,608.

United States District Court,
S. D. California, Central Division.
June 21, 1954.

Laughlin E. Waters, U. S. Atty., for the S. D. of California, by Louis Lee Abbott and Cecil Hicks, Jr., Assts. U. S. Atty., Los Angeles, Cal., for plaintiff.

Carl Yanow, Los Angeles, Cal., for defendant.

TOLIN, District Judge.

The defendant here was indicted under a penal statute providing for the punishment of any *alien* who attempts to enter the United States after having been deported, Title 8 U.S.C.A. § 1326. The principal defense offered was that defendant was not an alien, but, rather, a native-born citizen of this country. The matter was tried before a jury which returned a verdict of Guilty, thus, under the instructions, necessarily finding that defendant was not born in this country.

■ The matter is now before this Court on a motion for new trial. Two principal grounds are offered in support of the motion. The first is that the verdict is not supported by the evidence. The principal dispute of fact was relative to the birthplace of defendant. Defendant claimed he was born in the United States and offered certain evidence showing that his parents had given birth to a son in this country. The prosecution contended that the son born in the United States was not the defendant here but, rather, his brother, and that the defendant here had taken on the name and identity of such brother. The prosecution offered evidence in support of their contention, including testimony by members of defendant's family, that this defendant was not the child born in the United States but rather was born in Mexico, and that the child born in the United States died a short time after birth. The contradictory evidence on this subject presented a valid issue of fact for the jury's determination. Their verdict is amply supported by the evidence.

■ The second principal ground urged in support of the motion for new trial involves an instruction given by the Court. Defendant produced a public birth certificate showing that his parents had given birth to a son in the United States. The certificate indicated on its face that it was:

"Offered for filing pursuant to order of the Superior Court of Los Angeles, County, made the 13th day of August A.D. 1936, establishing of record the fact of birth."

Defendant seasonably requested that the jury be instructed that if they found "that the birth certificate was placed on record by the defendant herein and that the same is his birth certificate, such facts must be accepted by you." The instruction, as requested, is not completely clear. The requirement that the jury must find that "the same is his birth certificate" seems to beg the question. However, the Court revised several of defendant's offered instructions which were defective. Therefore, having adopted a liberal policy respecting offered instructions, it follows that if the specific instruction now under consideration was correct in principle, even if imperfect in enunciation of a legal principle, it should have been revised and given. The offered instruction was taken by the Court to mean that if the jury found that defendant caused the birth certificate to be recorded, then they must find that this certificate referred to defendant's birth, and that the facts recited therein must be taken as conclusive. Since there was no doubt under the evidence but that this defendant caused the delayed entry of this birth certificate, the instruction, in effect, amounted to a directed verdict on the basis that the birth certificate was conclusive as to the place of defendant's birth.

The Court did not give the instruction as proposed, but rather, instructed that the certificate was *"prima facie"* evidence of the facts set forth therein.[1] Defendant contends that this was in error.

---

1. An appropriate instruction on the meaning of *"prima facie"* given.

The defendant does not contest the proposition that *ordinarily* the record of an instrument which the law requires to be recorded is only *prima facie* evidence of the validity of the instrument. See, McGarrahan v. New Idria Mining Co., 96 U.S. 316, 24 L.Ed. 630; Barthel v. Stamm, 5 Cir., 145 F.2d 487; Dill v. Snodgress, 213 Ark. 526, 211 S.W.2d 440; Powell v. Sandefur, 190 Okl. 54, 120 P.2d 365. See also, Calif. Health and Safety Code, § 10551. He does contend, however, that since the instrument was recorded pursuant to an order of the Superior Court, that it thereby gains some higher status. Specifically, defendant says that it is a judgment and that under the "full faith and credit" clause of the Constitution, must be treated as a conclusive adjudication of the facts therein recited.

The same contention was before the Court in Ex parte Lee Fong Fook, D.C.N.D.Cal., 74 F.Supp. 68 [2]. The court there disposed of the contention with the following remarks in 74 F.Supp. at pages 70, 71:

"At the hearing in this Court, petitioner contended, as he did through his counsel before the Board of Special Inquiry, that the decree of the Superior Court of the State of California has established petitioner's birth in the United States, and that it was beyond the authority and power of the immigration officials to pursue any inquiry as to the decree's validity. The argument of the petitioner in this regard is that the State Court decree is an adjudication of petitioner's citizenship by which the United States is bound under the Full Faith and Credit provision of the Constitution, Const. Art. IV, as extended by statute to the Federal Courts. 28 U.S.C.A. § 687.

"Neither reason nor authority support this contention.

"The proceeding authorized by California state law for the establishment of the fact of birth is not an adversary proceeding, save and except that the statute requires that notice of the hearing be given to the District Attorney of the county wherein the hearing is had. The United States not being a party to such proceeding, nor having consented thereto, is not bound by the state court adjudication. Particularly is this so as to the administration of laws of the United States, which it alone enforces. Const. Art. I, Sec. 9, Clause 1. If the California Court had granted petitioner a decree of naturalization, pursuant to its authority so to do expressly granted by Congress (54 Stat. 1140, 8 U.S.C.A. § 701), then of course such a decree would be fully binding on the United States and could only be attacked in the manner provided by Federal Statute. 8 U.S.C.A. § 738. But jurisdiction to adjudicate the citizenship status of a United States resident has never been conferred by Congress on state courts. Consequently, any state court judgment purporting to exercise that jurisdiction cannot to that extent, claim of the Federal Courts full faith and credit."

Other reasons also support the conclusion reached by the court. Generally the "Full Faith and Credit" clause of the United States Constitution requires that, when there is no challenge to jurisdiction, this Court give the same effect to a state judgment (or a state *public act* or *record)* as the courts of that state would be required to give it. See, Mills v. Duryee, 7 Cranch 481, 11 U.S. 481, 3 L.Ed. 411; Thompson v. Whitman, 18 Wall 457, 85 U.S. 457, 21 L.Ed. 897. Nothing greater is required of this Court. Wright v. Georgia R. & Banking Co., 216 U.S. 420, 30 S.Ct. 242, 54 L.Ed. 544. Thus, is would appear that an important line of inquiry would be what effect would the California courts give this judicial determination or the

---

**2.** Remanded on other grounds without comment on this point. 9 Cir., 170 F.2d 245.

record so established. This would, in turn, involve a determination of the *power* and *intent* of the California legislature in passing the statute under which the defendant established the birth record.

■ The nature of the Superior Court action is important. Insofar as it was merely an adversary proceeding between the defendant and the State of California, the problem is simplified. An action determining rights as between two parties would not, of course, conclusively determine one of those party's rights as against a third party. See, Economy Light & Power Co. v. United States, 256 U.S. 113, 41 S.Ct. 409, 65 L. Ed. 847; Privett v. United States, 8 Cir., Cal., 261 F. 351, affirmed 256 U.S. 201, 41 S.Ct. 455, 65 L.Ed. 889; Heath v. Helmick, 9 Cir., Cal., 173 F.2d 157. However, the state action here might well, on first impression, appear to be something more than a mere adversary proceeding; it may appear to be a determination of *status*. If the requisite jurisdiction were satisfied, a determination of status might be binding as against the world and, by force of the "Full Faith and Credit" clause, be conclusive on other state and federal courts. Williams v. North Carolina, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279; as explained in Williams v. North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (divorce); Worman v. Worman, 113 Fla. 233, 152 So. 435 (annulment). Thus it might be argued that, having jurisdiction over the person of the defendant here, the California court would determine his place of birth and that such determination would be conclusive as against the world.

■ However, even assuming that the California Legislature had the power to allow a court to make a conclusive determination of such a status, the Court does not feel it intended to so empower the court by the statute involved here. California Health and Safety Code, Chapter 8. A reading of this Chapter in its entirety shows that the intent of the Legislature was to have such belatedly

established record take its place alongside the promptly recorded records. There is no indication that the Legislature intended to raise records or parts of records so belatedly established to any greater status than the normally registered records which are never, in cases of birth recordation, to be taken as irrebuttable evidence. In other words, it appears that the role of the Superior Court in ordering the recordation partakes of an administrative function. It is merely an act of recordation which has been permitted by judicial action rather than by an administrative officer. The judgment in such an action is not that the facts so found are absolutely conclusive as between petitioner and the rest of the world, but rather, the judgment is that the registrar is ordered to make such a recording.

An analogous situation is the case of a judicial replacement of a lost or destroyed instrument or record. The effect of such a substituted recordation is well stated in 76 C.J.S., Records, § 52:

"A record duly substituted on proper proceedings by order of a court of competent jurisdiction in the place of one lost or destroyed has the same efficacy, force, and effect as the original record would have, (citing cases) no more and no less. (Citing cases.) The judgment or decree of substitution merely supplies record evidence of a record previously in existence, (citing case) and determines that such record did exist, was lost or destroyed, and is replaced (citing case) by a substitute which substantially conforms to the original record, (citing case) and does not establish the legal sufficiency of such substitute for any particular purpose, this being the same as that of the original record. (Citing cases.)"

To the same effect see, McColgan v. Piercy, 17 Cal.App. 160, 118 P. 957.

■ It is important to note that even if the California Legislature did intend that such a determination was conclu-

sive (which this Court finds it did not intend to do) such an intention would, most probably, run afoul of Constitutional prohibitions. Making such an *ex parte* appearance conclusively establish the facts surrounding a person's birth or death might well infringe on and conclusively determine the rights of any third person having contractual or other relations with, and regulatory duties concerning, such person. This would appear to deny such third person due process.

The motion for new trial is denied.