JACOB HOROWITZ *v.* SHIRLEY HOROWITZ, ADMINISTRATRIX
[No. 34, April Term, 1938.]

Decided June 14th, 1938.

18

The cause was argued before BOND, C. J., URNER, OFFUTT, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Randolph Barton, Jr.*, with whom was *Albert Moss* on the brief, for the appellant.

*Edward L. Ward* and *J. Paul Schmidt*, with whom were *Ben Weintraub* and *Isaac Lobe Straus* on the brief, for the appellee.

MITCHELL, J., delivered the opinion of the Court.

The appeal in this case is from a decree entered in the Circuit Court of Baltimore City on the 20th day of December, 1937, adjudicating the title to one hundred shares of common stock of the Garrison Realty Holding Corporation as being in the estate of Isadore E. Horowitz, deceased, upon which estate Shirley Horowitz, his widow, the appellee herein, is the sole administratrix.

Because of prior litigation, of which the shares of stock involved were in part the subject matter, and the reference to such prior litigation embraced in the decree appealed from, that decree is set out in this opinion, and is as follows:

"The above cause coming on for hearing, and the Court having read the papers, heard the testimony produced, and considered arguments of counsel, it holds and decides that the title to the one hundred shares of the common stock of the Garrison Realty Holding Corporation, in question in this cause, is vested in the estate of Isadore E. Horowitz, deceased, for the reason, that the defendant herein affirmatively asserted in his answer title in himself to said stock in the case of Shirley Horowitz, et al., against Jacob Horowitz, et al., heretofore pending in the Circuit Court No. 2 of Baltimore City, by virtue of

an alleged gift from Isadore E. Horowitz, a few days before his death, thus making said gift to and title in the defendant an issue in said cause; upon this issue the defendant offered testimony, which was adjudicated by the Court adversely to him. That said adjudication is implicit in its refusal to grant affirmative relief to the defendant upon said claim and issue thus tendered.

"It is therefore this 20th day of December, 1937, by the Circuit Court of Baltimore City, Adjudged, and Decreed, that the title to said one hundred shares of common stock of the Garrison Realty Holding Corporation, referred to in the bill of complaint and evidence, is hereby declared to be vested in the Estate of Isadore E. Horowitz, deceased, and the defendant is hereby directed to deliver unto the plaintiff herein, as administratrix of said decedent's estate, the certificate representing said stock properly endorsed by him, so that a certificate for said stock may be issued in the name of the plaintiff herein, as a part of the assets of said decedent's estate; And it is further adjudged and decreed, that the costs in this proceeding be paid by the defendant."

As has been indicated, it will be noted, by reference to the foregoing decree, that the same is based upon the decree in the prior proceeding in the Circuit Court No. 2 of Baltimore City. It therefore becomes necessary, to some extent, to review the former proceedings for the purpose of setting forth the basis upon which the decree now under consideration was reached; for the reason that it appears from the record that all the pleadings and testimony, as well as the opinion and decree, in the former case, over the appellant's objection, were admitted by the chancellor in the instant case "only for the purpose of showing the defense made in the earlier case as bearing on the question of *res adjudicata*."

A brief review of the pleadings and testimony reveals the following state of facts: That for some time prior to November 16th, 1933, the said deceased was owner of said stock, as evidenced by a single certificate, issued in his name; that the remaining outstanding stock in the

above company was originally held by Jacob Horowitz, the appellant, and Joseph Schlessinger, to the extent of one hundred shares each, and that at the time of the death of Isadore E. Horowitz, the Schlessinger stock was vested in the Union Trust Company of Baltimore. That Isadore was a son of Jacob Horowitz, and that on November 15th, 1933, the former entered the Maryland General Hospital, where two days later he was operated upon, and where, a week following the operation, he died. The day after Isadore entered the hospital he assigned his certificate of stock to his father, having, out of the presence of the father, and as far as the record goes, without the latter's knowledge, expressed his desire to transfer the stock to his father, in a conversation had with his brother, Louis Horowitz, and stated as his reason for such action that he wished to protect his father against the loss of money the latter had invested in the company, whereas, as an asset of his own estate, it would be of small value. To the end that the certificate might be procured by Louis, the latter was given the key to a safe deposit box in which it was contained and instructed to get the same and bring it to the hospital for the purpose of effecting the assignment. These instructions were followed by Louis, who in the course of the transaction found that it was necessary to have the co-operation of Albert Moss, the attorney of the deceased, in order to gain entrance to the deposit box. Upon obtaining the certificate, Moss retained it in his possession and accompanied Louis to the hospital, where the deceased, in the presence of only Louis and Moss, in his own handwriting filled in the assignment to his father, designated Moss as the attorney to make the transfer, formally executed the same, and handed it to Louis, with instructions to deliver it to his father.

After her qualification as administratrix of the estate of her husband, Mrs. Horowitz made demand upon the appellant for the return of the stock; and, upon his refusal to do so, a bill of complaint was thereafter filed by her, both individually and as administratrix, and by

Rose Lee Horowitz and Elwood Horowitz, infant children of the deceased, by their mother and guardian, Goldie Horowitz, the divorced wife of the deceased, against the said Jacob Horowitz, in which, among other things, it was alleged that the assignment of the certificate of stock was secured by undue influence practiced upon the deceased by his father, with intent to defraud, at a time when he was about to undergo a serious operation, the result of which was doubtful. In substance, the bill set forth that the deceased was induced to assign the stock because, in event of his death, the beneficiaries of his estate would mismanage and waste it; that through this mismanagement the remaining interests in the corporation would be seriously affected; and that the father secured the assignment of the same under the express understanding that he would hold the stock in trust for the use and benefit of the said widow and children, share and share alike. The bill prayed that the stock be impressed with a trust for the use and benefit of the widow and children; that the defendant be required to deliver up and transfer the certificate representing said stock; and that meanwhile the company be restrained from permitting any transfer of said shares of stock, and the defendant enjoined from disposing of the same.

The answer of the defendant denied the allegations of fraud and undue influence, and set forth the circumstances under which the stock was assigned to him, as hereinbefore detailed, as effecting a free and voluntary gift of the said stock to him by the deceased. After the filing of the answer, upon the petition of Mrs. Horowitz, she was dismissed as a party to the proceedings in the capacity of administratrix of her husband. To the bill, as thereby amended, a demurrer was interposed, upon the ground (a) that the administratrix was a necessary party to the suit, and (b) that, because the bill alleged that the stock was obtained by the defendant through undue influence, with intent to defraud the plaintiffs, it followed that if the allegations of the bill were substantiated, and the assignment of the stock declared null

and void, then the same would necessarily be deliverable only to the administratrix as such. The demurrer being sustained, with leave to amend, the original plaintiffs, other than the administratrix, filed an amended bill in which, omitting the charge of fraud and undue influence in the procurement of the stock, they set forth that the deceased had endorsed the stock certificate and caused the same to be transferred to his father in trust, for the benefit of his widow and two infant children, to be delivered to them in event of his death from the contemplated operation. The said amended bill alleges the demand upon the defendant for the delivery of the stock, his refusal to deliver the same, with the fraudulent purpose of appropriating it to his own use; and prays that the stock represented by the certificate be impressed with the trust, and that the defendant be directed to transfer the same to the widow and infant children. The answer of the defendant to the amended bill is substantially similar to that filed to the original bill, and reaffirms the unqualified gift of the stock to the defendant. At the conclusion of the testimony in the former case, which followed the next above state of the pleadings, the chancellor passed the following decree, which, as will be seen by reference thereto, resulted in a dismissal of the bill in the former suit:

"The above cause coming on for hearing, and the Court having read the papers, heard the testimony offered by the respective parties and considered the arguments of counsel, and being of the opinion, 'that Isadore E. Horowitz did not make any valid declaration in trust in favor of the plaintiffs, or any valid gift to Jacob Horowitz, defendant, of the stock in this cause, and that the title and ownership of said stock remains in Isadore E. Horowitz, and his estate,' but as the administratrix of the estate of Isadore E. Horowitz, deceased, is not a party hereto;

"It is this 30th day of October, 1935, by the Circuit Court No. 2 of Baltimore City, Adjudged and Decreed, that the bill of complaint herein, be and the same is

hereby dismissed; provided that nothing in this decree shall prejudice or affect the right of the estate of the said Isadore E. Horowitz, deceased, or the administratrix and distributees of said estate, to proceed as they may be advised is proper to enforce any rights of said estate and the distributees thereof in, to and respecting said stock; and it is further adjudged and decreed that each side shall pay its own costs."

The bill of complaint in the instant case, which was thereafter filed by the administratrix as the sole party plaintiff against Jacob Horowitz, in substance alleges the ownership of the stock by the deceased; his death, and the qualification of the administratrix as such; and that while suffering from a serious ailment, for which he was about to be operated upon with doubtful results, the deceased attempted to assign the stock to his father without consideration; that the same, neither before nor after his death, was transferred on the books of the company; and that the said attempted transfer of the stock being invalid, the title and ownership thereof was vested in the plaintiff. Finally the bill avers that the said stock was the property of the deceased at the time of his death, and as such had passed to the plaintiff as his administratrix, as had been determined by the Circuit Court No. 2 in the proceedings to which reference has hereinbefore been made, and as will be observed by reference to the decree in this proceeding; and prays the court to decree the plaintiff, as administratrix of the estate, to be the true owner of said stock, and that meanwhile the defendant be restrained from assigning or transferring the same; and for general relief.

While in addition to the record of the proceedings, including the testimony, in the former case, which, as hereinbefore stated, the chancellor admitted for the purpose of deciding the sole question of *res adjudicata*, it appears that testimony in the instant case, over objection, was adduced by the plaintiff tending to show the insolvency of the estate of Isadore E. Horowitz at the time of the alleged gift of the stock, and further tend-

ing to show that the stock was not actually transferred on the books of the company to Jacob Horowitz until the 30th day of October, 1935, or a short while prior to the date of the filing of the bill of complaint in the instant case, and after the decree passed in the first proceeding; it is nevertheless apparent from the decree, from which this appeal is taken, that the sole question decided by the learned chancellor below was that of *res adjudicata*, and therefore that question is likewise the sole one presented by this appeal.

The rule is well settled that if a question has once been tried and decided by a court having jurisdiction of the parties to a controversy and the subject matter involved therein, it can not be again litigated between the same parties, or their privies, in the same or in any other tribunal, so long as the adjudication remains unreversed and in full operative effect. This doctrine is founded on the broad principle that it is to the interest of the public that there should be an end of litigation by the same parties and their privies over a subject once fully and fairly adjudicated. 15 *R. C. L.* 953, sec. 430; *Martin v. Evans*, 85 Md. 8, 36 A. 258. Stated differently, the doctrine of *res adjudicata* is a sane one, based on simple and beneficent principles. The reason for its existence is plain, notwithstanding that its application to varying facts in the endless chain of cases in which it is invoked necessarily gives rise to difficulty. *Freeman on Judgments* (5th Ed.) p. 1646, sec. 774. As was well said in the recent case of *Myers v. Gordon*, 165 Md. 534, 170 A. 186, 187: "The question of what are the requisites necessary to be shown in order that a prior judgment become a complete bar to subsequent suits has been the subject of many decisions of this court. An examination of the cases discloses that the general rule is now settled that, in order to bar, the court must be a competent court, having jurisdiction of the parties and the subject matter, that the issue passed upon and decided must have been the same, or the point of the claim or defense must have been capable of being made

by the parties, that a final judgment must have been rendered determining the point at issue, and the parties must be the same." See *Cecil v. Cecil*, 19 Md. 72.

In this connection it may be well to state that under the provisions of section 30 of article 5 of the Code of this State, relating to appeals from courts of equity, it is provided: "An appeal shall be allowed from any final decree, or order in the nature of a final decree, passed by a court of equity by any one or more of the persons parties to the suit." And it will be noted that the right of appeal is restricted to a situation (a) in which there is a final decree, and (b) in which the appellant is a party to the suit.

It is urged by the appellant that the admission, for the purposes of the instant case, of the proceedings in the former case, as amended, wherein the widow and children of the deceased were alone parties to the suit, and wherein the gist of the action was to impress the stock with a trust, was in effect a violation of section 3 of article 35 of the Code, which in part provides: "In actions or proceedings by or against executors, administrators, heirs, devisees, legatees or distributees of a decedent as such, in which judgments or decrees may be rendered for or against them, * * * no party to the cause shall be allowed to testify as to any transaction had with, or statement made by the testator, intestate, * * * unless called to testify by the opposite party"; and that therefore the effect of the amendment eliminating the administratrix as a party to the proceedings in the former case, and the admission of those proceedings in the instant case, was to make the testimony of the widow of the deceased competent against the defendant, whereas such testimony would not otherwise have been competent. We would agree with that contention if it were apparent that the widow in the former proceedings had supplied testimony bearing on the transaction between the deceased and the defendant, without having been called to testify by the latter; but as far as the record before us goes, she does not appear to have

testified at all in the former case, and for this reason we cannot conclude that the rule was violated in the case before us.

In order to reach a conclusion in this case, it becomes necessary to first determine the legal effect of the decree passed by the chancellor in the former proceedings, for the reason that the decree from which this appeal is taken, as is expressly stated therein, by reference thereto is based solely upon such construction of the former decree. In *Martin v. Evans, supra,* it is said (at page 12): "Whenever a decree dismissing a bill in equity fails to restrict its own scope, the presumption, according to the great preponderance of decided cases, is that the issues raised by the proceedings have been disposed of on their merits, and they, therefore, become *res adjudicata.* When 'the decree of dismissal is unqualified, it is presumed to be an adjudication on the merits adversely to the complainant, and constitutes a bar to further litigation of the same matters between the parties.' * * * But the authorities both in England and in this country are decisive that a general entry of 'bill dismissed,' with no words of qualification, such as 'dismissed without prejudice,' or 'without prejudice to an action at law,' or the like, is conclusively presumed to be upon the merits, and is a final determination of the controversy. And so in *Durant v. Essex,* 7 Wall. 107 [19 L. Ed. 154], the Supreme Court, in speaking of a decree dismissing a former bill between the parties, said: 'The decree dismissing the bill in the former suit in the Circuit Court of the United States, being absolute in its terms, was an adjudication of the merits of the controversy, and constitutes a bar to any further litigation of the same subject between the same parties. A decree of that kind, unless made because of some defect in the pleadings, or for want of jurisdiction, or because the complainant has an adequate remedy at law, or upon some other ground which does not go to the merits, is a final determination. Where words of qualification, such as "without prejudice," or other terms indicating a

right or privilege to take further legal proceedings on the subject, do not accompany the decree, it is presumed to be rendered on the merits.' *Lyon v. Perin & G. Mfg. Co.*, 125 U. S. 698, 8 S. Ct. 1024, 31 L. Ed. 839.

Applying this principle to the facts before us, we would have no difficulty in reaching the conclusion that the decree of the chancellor in the former proceedings would have been "an adjudication of the merits of the controversy, and constitute a bar to any further litigation of the same subject between the same parties," had it not been for the words of qualification or limitation appearing therein. In other words, the converse of the principle, as laid down in the above cited cases, is that where there is a qualification in the decree, the adjudication is not final. The authorities are in accord to the effect that the expression of the reasons by which a judge reaches his conclusions does not limit the decretal order dismissing a bill of complaint; the judgment or decree is the *fiat* or sentence of the law, and the reason for the signing of the decree is no part of the judgment itself. *State, use of Bruner, v. Ramsburg*, 43 Md. 325, 333; *Durant v. Essex, supra; Woods v. Fuller*, 61 Md. 457, 460. As we have seen, by section 30 of article 5, both parties to a cause are entitled to appeal from a final decree; and while it is true that the plaintiffs in the former case, or any of them, could have appealed from the decree dismissing their bill of complaint, there was nothing embraced in said decree which, in our opinion, made it incumbent upon the defendant to appeal, or from which, as a matter of fact, he could have appealed. Regardless of the opinion of the court in the former proceedings, found in the record, purporting to give the reasons of the chancellor for the passage of the decree (which, as has been noted, is no part of the decree), the defendant in the case, by the effect of the decree, was not prejudiced except by inference; and the decree expressly provided that nothing therein should be construed to prejudice the right of a third or entirely separate party to proceed, in an entirely separate suit,

28

to assert the rights of such third party with respect to the subject matter of the original proceedings. In other words, the dismissal of the bill in the former case left undisturbed the certificate of stock, with the assignment of the deceased thereon, in the possession of the defendant in that case; and doubtless it was the purpose of the chancellor, in stating in the decree his reasons for the dismissal of the bill, to preclude a final decree in favor of the defendant, which otherwise a decree of dismissal would have indicated. It is plain, however, that the decree, while conclusive as against the plaintiffs in the former proceedings, contemplated a separate and distinct suit as against the defendant in those proceedings; and because it was qualified by limitations, and thereby precluded from being final as against the defendant, cannot now be construed as *res adjudicata* against him.

In reaching this conclusion we are not unmindful of the decision of this court in the case of *Myers v. Gordon, supra,* which is urged by the appellee as conclusive of the question of *res adjudicata* as against the appellant. A careful analysis of the facts in that case, however, reveals a wholly different state of facts. Briefly, the subject matter of litigation there was the title to a bank deposit, the contending parties being the plaintiff, as administratrix of a deceased brother, and the defendant, who claimed the deposit as a joint one, with the right of survivorship to her, growing out of a transfer of the deposit from the deceased individually to the joint account. The suit was brought originally against the surviving claimant of the deposit, and the bank, and was defended throughout the trial by the claimant, the bank having no interest in the fund, and making no claim to it. After all the evidence in the case was concluded, and during the argument to the court on the prayers, the plaintiff administratrix non-prossed her suit against the claimant, and thereafter proceeded against the bank alone, the trial resulting in a verdict and judgment against her. Subsequently the administratrix instituted

a separate suit against the claimant alone, whereupon a plea of *res adjudicata* was interposed. Upon the overruling of a demurrer to the plea by the trial court, the case proceeded and resulted in a judgment in favor of the administratrix; and this court, in reversing the latter judgment without a new trial, said: "The appellant here was the real defendant, the party in interest, the party who conducted the defense throughout the first case. She was technically a party up until the production of all the evidence and the submission of the prayers, and was the substantial and real party to the close of that case, even though the defense, from the time of the *non pros.* as to her, was conducted by her, but in the name of the remaining technical party of record, the bank, which, as stated, had no interest in, and made no claim to, the fund in controversy. The verdict and judgment was for the bank, the then sole nominal defendant. After the time for appeal had expired, the bank paid the money to Mary C. Myers. Now the second suit is brought against Mary C. Myers to determine identically the same issue, on evidence to the same point. It is contended that the first case simply decided, that, as against the bank, the appellee was not entitled to the fund; but the bank made no claim to the fund, the claimant in that suit being, as in this, Mary C. Myers. There being only two parties who could have title to the fund, and the appellee undertaking to assert her title, and failing, it is uncontrovertible that the decision is equivalent to holding that Mary C. Myers was entitled to it, especially under the circumstances of this case, where it is shown that she defended the former suit throughout, upon the same grounds which she offered in defense of the present suit, and this is shown conclusively by a prayer offered by the defendant in the suit, that defendant being nominally the bank, but, as we hold, really being the appellant here." It is apparent that the claimant in the above case, although dismissed as a party defendant toward the conclusion of the case, was nevertheless a substantial party to the suit, and the only other possible claimant

to the fund as against the administratrix. The defense which was there made by the nominal party was, in effect, the same and the only defense which the claimant could have made, had she been continued as a party to the suit to its final conclusion, which, as between the only two parties concerned in the fund, was final; whereas in the instant case there is yet a controversy over the stock, and therefore no final adjudication as to the title to the same has resulted from the former litigation.

From the conclusions which we have reached, it follows that the decree below will be reversed, and the cause remanded for further proceedings in accordance with this opinion.

> *Decree reversed, and cause remanded for further proceedings in accordance with the views expressed in this opinion, with costs to the appellant.*